**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ONEKA SPICER,

    Plaintiff,                                  Case No. 20-10987

v.                                          Hon. Denise Page Hood

HARVARD MAINTENANCE, INC.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION**
**FOR ORDER TO SHOW CAUSE WHY PLAINTIFF SHOULD NOT BE**
**HELD IN CONTEMPT [#41], DISMISSING WITHOUT PREJUDICE**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#42], AND**
**GRANTING PLAINTIFF'S MOTION FOR SANCTIONS [#44]**

**I.    INTRODUCTION**

On March 9, 2020, Plaintiff Oneka Spicer filed this three-count action against Defendant Harvard Maintenance, Inc. in the Circuit Court for the County of Oakland. Plaintiff alleges: (1) Count I - sex and gender discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* (the "Act"); (2) Count II - race and color discrimination in violation of the Act; and (3) Count III - hostile work environment in violation of the Act. Defendants timely removed the case to this Court on April 22, 2020, correctly asserting that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

After extensions, March 24, 2021 became the discovery deadline, with a dispositive motion cut-off of March 29, 2021. On March 22, 2021, Defendant filed a Motion for Order to Show Cause Why Plaintiff Should Not be Held in Contempt of Court ("Motion for OSC"). ECF No. 41. On March 29, 2021, Defendant filed a Motion for Summary Judgment. ECF No. 42. On April 7, 2021, Plaintiff filed a Motion for Sanctions (Rule 37) ("Motion for Sanctions"). ECF No. 44. All three motions have been briefed.

## II. BACKGROUND

Defendant provides maintenance and cleaning services for clients across the United States. (Exhibit A, Affidavit Of Vicky Graham, ¶ 3). Beginning in the fall of 2014, Defendant entered into a new contract to provide commercial cleaning services to Southfield Town Center, an office building complex in Southfield, Michigan. (Ex. A, at ¶¶ 4, 6). Defendant's cleaning staff that work at Southfield Town Center are represented by the Service Employees International Union Local 1 ("the Union"). (Exhibit B, Harvard/SEIU Collective Bargaining Agreement, 2015-2018; Exhibit C, Harvard/SEIU Collective Bargaining Agreement, 2018-2022). The terms and conditions of Plaintiff's employment were generally governed by the collective bargaining agreement between Defendant and the SEIU.

Defendant's entire Southfield Town Center operations are managed by Account Manager Vicky Graham. At the time of Plaintiff's employment, Graham had three Site Supervisors who reported to her – Melissa Irving; Chris Copeland; and Lisa McCree. The Site Supervisors have direct supervisory authority over the cleaners assigned to them. The specific suites or floors that Defendant assigns each cleaner to clean are referred to as the cleaner's "station." If a particular cleaner is failing to complete all necessary tasks within their shifts to clean their station adequately, Defendant may attempt to remedy a cleaner's poor performance by imposing a "cleaning schedule." Cleaning schedules are only provided to poorly performing employees, and they specify minute-to-minute work instructions to keep cleaners on task.

In May 2017, Plaintiff applied for and was hired by Defendant as one of its "general cleaners." Plaintiff's job duties primarily consisted of cleaning a number of tenant offices located at the Southfield Town Center. The terms and conditions of Plaintiff's employment were delineated in two successive collective bargaining agreements ("CBA"). Both CBAs contain the following identical language concerning employee discipline and termination:

> ARTICLE IX. DISCIPLINARY ACTION AND DISCHARGE.
>
> * * *

> Section 2. [Harvard] shall not discharge or suspend any seniority employee without just cause and progressive discipline, and in respect to discharge or suspension, [Harvard] shall first give at least two (2) warning notices against the employee to the employee, in writing . . .

ECF No. 42, Ex. B at 15, Ex. C at 16.

Plaintiff's initial supervisor was Melissa Irving, an African-American woman. Defendant states that, by October 2017, Plaintiff had received a number of complaints from tenants whose offices she was assigned to clean, including that she had failed, on a number of occasions, to properly vacuum or mop the floors of the tenants' suites. ECF No. 42, Ex. E, at 19. Irving issued Plaintiff a written reprimand due to "substandard work," and Plaintiff refused to sign the reprimand.

On April 18, 2018, Plaintiff used the contractual bid process to transfer from being supervised by Irving to Copeland, an African-American man. By July 2018, Copeland had placed Plaintiff on a cleaning schedule due to her continued failure to properly clean the locations to which she was assigned. ECF No. 42, Ex. D at 59-60; Ex. E at 21-22. Plaintiff received a number of additional tenant complaints in August 2018, and Copeland noted that upon inspecting the tenants' suites, he found "multiple areas in [disarray], in need of vac[uuming] and dusting. Employee is not following cleaning schedule." Ex. E at 20). As a result, Copeland issued Plaintiff a written

4

reprimand on the combined bases of "insubordination" and "failure to follow instructions," and Plaintiff again refused to sign the reprimand. *Id*.

In October 2018, Copeland issued Plaintiff a second written reprimand after he observed her sitting at a tenant's desk, utilizing the tenant's belongings, doing a word search puzzle, and listening to music on a phone that was charging on bookshelf. *Id.* at 23. Copeland states that he instructed Plaintiff to immediately meet him in his office, but she never appeared. ECF No. 42, Ex. D at 72. Copeland returned to the tenant's office where he had last seen Plaintiff and found her still sitting in the tenant's chair. *Id*. Copeland contacted Graham on the night of this incident to report what had occurred, and Graham instructed him to suspend Plaintiff. *Id*. at 90-91.

Plaintiff then had two valid (current) written reprimands noted in her file (the first one had been removed due to its age). Consistent with Article IX, Section 2 of the CBA, Plaintiff was placed on a three-day suspension. ECF No. 42, Ex. E at 23. Pursuant to the CBA, Plaintiff was required to file a grievance with the union and attend a grievance meeting with Copeland, Graham, and a union representative before Defendant could consider permitting her to return to work. ECF No. 42, Ex. D at. 92; Ex. B, Article X, Section 1 at 16; Exhibit C, Article X, Section 1 at 17-18. The grievance meeting was held on October 20, 2018.

At the grievance meeting, Plaintiff admitted that she had indeed been utilizing the tenant's property and writing in a wood search book when she should have been working. ECF No. 42, Ex. D at 63-64. According to Graham, Plaintiff also displayed a series of rude and nonchalant behaviors, including repeatedly stating "I don't care" and shrugging her shoulders in a gesture of "so what" when discussing the misconduct that resulted in her write-up and ultimate suspension. *Id.*

At one point during the meeting, Mr. Darryl Hall, a union representative, requested that Graham, on behalf of Defendant, agree to enter into a "Last Chance Agreement" with Plaintiff. Graham responded to Hall's request a few days later via email, stating:

> I know you requested a "Last Chance Agreement" during the meeting. We are declining your request. . . . I will list the reasons for our decision below:
>
> - Employee was sitting at the tenants desk, utilizing the tenant items while listening to music, using phone charger, and doing a crossword puzzle for an obscene amount of time. (caught by supervisor) > Major company violation- "Unauthorized use of customer property"
>
> - Insubordination; taking unauthorized break; time fraud
>
> - The supervisor went back up to the suite, when the cleaner was not answering to report to the officer after being caught. The employee was still sitting at the tenants desk. > "sleeping, loafing, or malingering on the job"

- "Performing unauthorized personal work on company time"

- Ms. Spicer displayed rude behavior in the grievance meeting, she admit[ted] to sitting down and using the tenant items, with a nonchalant attitude. She also has complaints on job performance in different suites, which is an indication that work was not getting done. She also displayed no regard as to what happens with her job. With that being said, we are moving towards termination.

ECF No. 42, Ex. E at 52. Graham terminated Plaintiff shortly after the grievance meeting. A few days later, on November 10, 2018, Hall sent Plaintiff a letter informing her that the union had concluded Defendant had not breached the CBA in disciplining or suspending Plaintiff. As a result, Hall wrote that the union "has no choice but to withdraw the case grievance effective 11/09/18." ECF No. 42, Ex. F.

### III. ANALYSIS

**A.  Defendant's Motion for Summary Judgment**

As discussed below, after a consideration of the pending motions, the Court has determined that depositions of Plaintiff and a particular Rule 30(b)(6) witness for Defendant are necessary. Until such depositions are conducted, a ruling on Defendant's Motion for Summary Judgment would be premature. Accordingly, the Court dismisses Defendant's Motion for Summary Judgment, which may be renewed and refiled, subject to the completion of the depositions and additional briefing, if any, pursuant to the terms of this Order.

**B.      Motion for OSC and Motion for Sanctions**

Both of these motions stem from disputes the parties have had since the onset of discovery as to depositions of Plaintiff and Defendant's Rule 30(b)(6) witness, all of which is discussed in more detail below. Defendant's Rule 30(b)(6) witness, Tatijana Susa, was deposed on April 1, 2021. A second Defendant witness, Graham, was deposed on December 22, 2020. When Graham was deposed, she was not identified as a Rule 30(b)(6) witness. On about March 26, 2021 (days before Susa's deposition), however, Defendant indicated that it intended "to rely on the deposition testimony of . . . Graham to represent [Defendant's] testimony to the extent that she provided testimony on" topic numbers 7, 8, and 13-19 of the Notice of Deposition pursuant to which Susa testified. Plaintiff has never been deposed.

**1.      Basis for Motion for OSC**

Defendant moves the Court to issue Plaintiff an order to show cause why she should not: (a) be held in contempt of court for refusing to comply with a deposition subpoena; and (b) have her case dismissed for failure to prosecute or cooperate in discovery. Defendant argues that Plaintiff (or her counsel) improperly refused to appear (be produced) for her deposition until after Defendant's Rule 30(b)(6) witness testified and, as a result, Plaintiff was never deposed.

Defendant asserts that, during the course of discovery in this case, it made many attempts to schedule Plaintiff's deposition, including:

a. On December 17, 2020, Defendant's counsel submitted its first request for dates for Plaintiff's deposition, to which Plaintiff's counsel never responded.

b. On January 5, 2021, Defendant served a Notice of Deposition for Plaintiff for January 12, 2021. Plaintiff's counsel responded, stating she was unavailable on the date chosen by Defendant, but failed to provide alternate dates.

c. On January 11, 2021, Defendant's counsel sent a second request for dates for Plaintiff's deposition. Plaintiff's counsel never responded.

d. On January 15, 2021, Defendant's counsel sent a third request for dates for Plaintiff's deposition. Plaintiff's counsel informed Defendant she was seeking her client's availability but, ultimately, never provided dates.

e. On January 22, 2021, Defendant's counsel made a fourth request for dates. In response, Plaintiff's counsel provided dates Plaintiff might be available for her deposition, but conditioned producing Plaintiff on first obtaining the deposition of Defendant's corporate designee under Plaintiff's Rule 30(b)(6) Notice of Deposition. The basis for Plaintiff's counsel's refusal to allow her client to be deposed was that Plaintiff's 30(b)(6) notice of deposition had been served first. ECF No. 41, Ex. E.

f. On February 9, 2021, Defendant served a First Re-Notice of Deposition for Plaintiff on February 16, 2021. Plaintiff's counsel again stated that she refused to produce her client for deposition until Defendant first produced a corporate designee in response to Plaintiff's Rule 30(b)(6) deposition notice.

g. On March 5, 2021, Defendant served a Second Re-Notice of Deposition for Plaintiff on March 12, 2021. Plaintiff's counsel responded, stating

        she was not available on the date chosen by Defendant but, again, failed to provide alternate dates.

h. On March 5, 2021, due to the approaching discovery deadline of March 24, as well as the motion deadline of March 29, Defendant's counsel sought concurrence to file a stipulated order adjourning those scheduling order dates, but the parties did not work together to do so.

I. On March 8, 2021, Defendant filed a subpoena directing Plaintiff to appear at her deposition on March 12, 2021. ECF No. 39.

j. Plaintiff did not appear for her deposition on March 12, 2021

k. As of 4:00 p.m. on Friday, March 19, 2021, five days before the close of discovery, Plaintiff's counsel had continued to refuse to provide dates for Plaintiff's deposition.

Based on the foregoing, Defendant concluded that Plaintiff's counsel had no intention of producing Plaintiff for her deposition in this case. Plaintiff still has not been deposed.

Defendant argues that Plaintiff's counsel improperly refused to produce Plaintiff for deposition until Defendant produced its Rule 30(b)(6) witness (as Plaintiff had first and long ago sought that deposition).[1]  Defendant contends that Plaintiff's

---

[1]Defendant cites the following list of e-mail messages from Plaintiff's counsel, in which she refused to produce Plaintiff for deposition until after the 30(b)(6) deposition:
    1.    "…[A]s we've previously discussed, we asked for and noticed this 30b6 deposition first, and we need to get it scheduled before we'll be doing our client[']s deposition." ECF No. 41-6, PageID.533.

    2.    In response to a re-notice of Plaintiff's deposition: "We are not proceeding with any deposition until you all proceed with the 30b6 deposition…" ECF No. 41-7, PageID.538.

counsel was in direct violation of FRCP 26(d)(3) when, absent a stipulation as to the order of the depositions, she unilaterally insisted on the order of the parties' depositions. ECF No. 41, Page ID.503-511.² Defendant relies on Rule 26(d)(3), which prohibits delaying one party's discovery in favor of another's. Defendant states that Plaintiff does not cite to any legal authority stating otherwise but tries to justify her conduct by suggesting she had no choice but to refuse to produce Plaintiff because Defendant repeatedly "fil[ed] a motion of some sort to prevent the corporation representative from having to testify." ECF No. 43, Page ID.828. Defendant argues that it never moved to prevent a corporate designee from testifying or refuse to

---

3. As the discovery and motion cutoff dates approached and Defendant insisted on taking Plaintiff's deposition: "…I am not doing [Plaintiff's] deposition before the one we have been trying to schedule for over 6 months….If you want to proceed with the 30b6 deposition, then we can proceed with the plaintiff's deposition thereafter." ECF No. 41-9, Page ID.550.

²On March 8, 2021, Defendant's counsel stated:

As I've said before, I don't have any theoretical opposition to your 30b6 deposition happening before your client's, but nothing in the court rules (or elsewhere) gives you the right to that deposition order. We need to either (1) take your client's deposition by March 15th, at the absolute latest, so that we have time to get a transcript back and file our MSD by [March] 26th; or (2) we need to agree to extend the MSD deadline.

ECF No. 41-9, PageID.550-51. Defendant's counsel said something similar the following day:
We cannot schedule the 30(b)(6) deposition until the court rules on our motion. We had a hearing on that very fact in early February....The judge did not agree with your insistence that we produce a corporate designee while our motion was still pending. You, however, can produce your client before the court rules on our motion….

*Id.* at 549. Defendant maintains that those statements made it clear that Defendant opposed Plaintiff's counsel's statement regarding the order of the depositions.

produce one. It states that it filed a motion for protective order to limit the scope of the 30(b)(6) deposition, a request for clarification, and a motion for reconsideration. ECF Nos. 10, 28.

Defendant argues that Plaintiff's counsel also refused to adjourn the dispositive cut-off date in March 2021, even after Defendant proposed that:

> In that case, it appears our best bet is to adjourn the motion cutoff date by 30 days, considering there's only a three day window between that and discovery cutoff date at present. We can then use the full remaining discovery time to take the depositions instead of waiting for transcripts to be returned. Would you concur to a motion?

ECF No. 41-9, PageID.551. As Defendant notes, Plaintiff responded: "I would definitely not be agreeable to that…given how long we have been waiting to take the 30b6 deposition" (*Id*.). Defendant's counsel sent two more emails, explaining she needed to take Plaintiff's deposition if Plaintiff's counsel would not agree to extend the motion cutoff date, but Plaintiff remained steadfast in her position. *Id*. at 549-50. Plaintiff's counsel later stated that she "didn't refuse to extend any MSJ dates" and was only objecting to taking Plaintiff's deposition on the date Defendant had noticed, not to extending the MSJ dates. *Id*. at 547-48. Defendant states that the email in which Defendant's counsel requested concurrence (and Plaintiff allegedly refused) only referred to extending the motion cutoff date and did not even mention Plaintiff's deposition date. *Id*. at 551.

12

Defendant indicates that it sent Plaintiff a stipulated order adjourning all dates, including the discovery and motion cutoff dates, on March 10, 2021. Plaintiff eventually stated that she "already agreed to extend the time to do discovery," but did not say anything with respect to extending the motion cutoff date, even though Defendant had made clear it was its primary concern. *Id*. Defendant suggests that Plaintiff's response lacked any acknowledgment that she had reviewed the stipulated order or agreed to extend the motion cutoff date.

After reviewing the parties' correspondence, the Court finds otherwise. Plaintiff's counsel stated:

> **I don't have an issue with the extension of dates**…. **Again, if you want to stipulate to an extension of time to conduct discovery**, because we obviously will not get any depositions done before it closes, **I have said several times that that was fine**.

ECF No. 47, PageID.903 (emphasis added). The highlighted language, communicated only a day after the proposed stipulated order extending dates, suggests that Plaintiff would be agreeable to the range of extensions, even if her response was (understandably) focused on discovery (which is what was important to Plaintiff). The Court is not persuaded by Defendant's contention that Plaintiff's counsel's March 10, 2021 response clearly signaled that Plaintiff had no intention of agreeing to extend the motion cutoff date at all.

13

Accordingly, the Court denies Defendant's motion for an order to show cause why Plaintiff should not be held in contempt, but it will order Plaintiff to appear for a deposition promptly after the entry of this Order.

**2.   Motion for Sanctions**

Plaintiff states that, on July 6, 2020, the parties exchanged initial disclosures. Plaintiff propounded written discovery, including interrogatories and requests for production of documents. Plaintiff specifically requested all correspondence related to Plaintiff's employment, termination, or mentioning Plaintiff at any time. On September 14, 2020, Defendant responded to Plaintiff's written discovery. Plaintiff claims Defendant did not produce any emails mentioning Plaintiff.  Plaintiff insists that she has been requesting the deposition of Defendant's corporate representative since last August of 2020.  That deposition did not take place until April 1, 2021, after two orders to compel were granted – and a motion for reconsideration denied – by the Magistrate Judge.

Defendant designated HR Director Tatijana Susa as its Rule 30(b)(6) witness. Susa was a Defendant representative from Miami, Florida, not Illinois as Defendant had been ordered to produce. Defendant's counsel attempted to ask questions of the witness about her connection to Illinois, apparently aware that the witness was not compliant with the terms of the Magistrate Judge's order. Susa could not provide

14

answers to a number of questions, including for the reason that she was not in charge of the Midwest Region (where Plaintiff worked). Susa affirmed at the beginning of the deposition that she would be able to answer all categories on the Notice of Deposition except for paragraphs 7, 8, and 17, which sought:

> 7. Information regarding the decision to terminate Plaintiff.
>
> 8. Information regarding Plaintiff's personnel file, including any write ups, disciplinary actions, or the like.
>
> \* \* \* \* \*
>
> 17. The facts and circumstances that form, in whole or in part, the basis for your allegation in your Answer filed in this litigation.
>
> \* \* \* \* \*

Plaintiff states that Susa was not prepared to testify on topics in Plaintiff's personnel file, was not from Illinois as ordered by the Court, and had no knowledge of record keeping, facts regarding the basis of allegations in Defendant's Answer, or any information regarding the decision to terminate Plaintiff. ECF No. 48, Ex. 2 at 9-11, 13.

Plaintiff adds that Susa did testify about numerous documents that Plaintiff claims Defendant had not produced. Susa stated a chain of emails regarding verbal counseling, or write-ups that each employee receives were kept in the ordinary course of business. *Id*. at 92-94 ("The supervisor will e-mail it to manager, manager e-mail

15

it to HR and HR will scan and store document in E-file"). Plaintiff believes that Defendant did not produce any emails regarding Plaintiff's verbal counseling. Susa testified that write-ups are stored in a system called E-file, *id*. at 82, and termination dates are not listed in Win Team document, so none of the termination dates of alleged comparators were provided by Defendant. *Id.* at 86. Plaintiff complains that Defendant also did not produce entry termination change ("ETC") forms related to Plaintiff's comparators. *Id.* at 86-87. The ETC form is a .pdf completed by a manager, and entry into WinTeam would be done by HR. *Id.* at 87.

Plaintiff states that a few days before Susa's deposition, Defendant sent Plaintiff an email purporting to limit the topics for the deposition, and stating – for the first time ever – that it was "relying" on the testimony of Graham, who was deposed under Rule 26 in December 2020 as to certain topics ("including, but not [limited to] 7, 8, 13, 14, 15-19" of the original Notice of Deposition to Defendant's Rule 30(b)(6) witness). ECF No. 44, Ex. B at 1.

Plaintiff states that Graham testified about Defendant's inspections being logged in a nightly report or "handoff," an email that lists all work orders, e-mails, complaints, all done via e-mail. ECF No. 48, Ex. 3 at 37-38). Plaintiff contends that Defendant did not produce any of these nightly reports or "handoff" emails.

16

As noted above, it appears Plaintiff has received a number of the discovery items she claims to have not received (Plaintiff did not have a chance/elect to file anything in response to Defendant stating it had provided those items).

Plaintiff should be able to identify exactly what information is needed from Defendant's Rule 30(b)(6) witnesses and be able obtain such. Defendant's production of Susa as the 30(b)(6) witness did not satisfy the parameters of what Plaintiff sought in her Notice of Deposition and retroactively referring to Graham's testimony (without a chance to follow up) is an insufficient means of Plaintiff obtaining the discovery which she had been seeking for several months.

Accordingly, the Court grants Plaintiff's motion for sanctions to the extent that Plaintiff seeks to be able to depose a Rule 30(b)(6) witness who is prepared to testify on topics in Plaintiff's personnel file, is from Illinois as previously ordered by the Court, and has knowledge of record keeping, facts regarding the basis of allegations in Defendant's Answer, as well as any information regarding the decision to terminate Plaintiff. The Court declines to issue monetary sanctions at this time without prejudice to any future discovery issues the parties may raise.

## IV.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendant's Motion for Summary Judgment [ECF No. 42] is DISMISSED WITHOUT PREJUDICE which may be refiled/renewed after the depositions are held, consistent with the terms of this Order.

IT IS FURTHER ORDERED that Defendant's Motion for Order to Show Cause Why Plaintiff Should Not be Held in Contempt of Court [ECF No. 41] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions (Rule 37) [ECF No. 44] is GRANTED as follows:

> Within 30 days of the date of this Order (unless Plaintiff stipulates otherwise, with such stipulation to include a date for the deposition and be filed with the Court), Defendant shall produce for deposition a Rule 30(b)(6) witness who is prepared to testify on topics in Plaintiff's personnel file, is from Illinois as previously ordered by the Court, and has knowledge of record keeping, facts regarding the basis of allegations in Defendant's Answer, as well as any information regarding the decision to terminate Plaintiff.

IT IS FURTHER ORDERED that Plaintiff shall sit for a deposition within 30 days of the date of this Order (unless Defendant stipulates otherwise to a date, with such stipulation to include a date for the deposition and be filed with the Court).

IT IS FURTHER ORDERED that Plaintiff's deposition shall be conducted prior to the deposition of Defendant's Rule 30(b)(6) witness.

IT IS FURTHER ORDERED that 45 days from the date of the deposition of Defendant's Rule 30(b)(6) witness, Defendant may refile a renewed Motion for Summary Judgment, with any supplementation/revision, if necessary. Plaintiff must file any renewed response within 21 days from the filing of the renewed Motion for Summary Judgment, with any supplementation/revision, if necessary. Any renewed Reply to the Response must be filed within 14 days from the filing of the Response.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED: August 9, 2023