UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ONEKA SPICER,

    Plaintiff,

v.

HARVARD MAINTENANCE, INC.,

    Defendant.
_____/

Case No. 20-10987
Hon. Denise Page Hood

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [ECF NO. 67]

### I. INTRODUCTION

Before the Court is Plaintiff, Oneka Spicer's, Motion for Reconsideration Regarding Defendant's Second Motion for Summary Judgment. [ECF No. 67]. For the reasons stated herein, Plaintiff's motion is DENIED.

### II. BACKGROUND

Plaintiff is a former employee of Defendant, Harvard Maintenance, Inc. ("Harvard"). Plaintiff's Complaint alleges that while working for Harvard, she experienced discrimination based on her race and sex and was subjected to a hostile working environment. [ECF No. 1, PageID.12]. The Court granted Harvard's second motion for summary judgment because Plaintiff failed to provide evidence sufficient to show that she was discriminated against on any basis or that

she was subjected to a hostile work environment. [ECF No. 64]. Plaintiff now moves this Court to reconsider its ruling, arguing that the Court improperly dismissed her claims because there remain genuine issues of material facts for a jury to decide.

### III. LAW AND ANALYSIS

Parties seeking reconsideration of a final order or judgment must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). L.R. 7.1(h)(1). A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). A party seeking reconsideration must show "a palpable defect by which the court and the parties have been misled [and] show that correcting the defect will result in a different disposition of the case. *Graham v. Cty. Of Washtenaw*, 358 F.3d 377, 385 (6 Cir. 2004). A palpable defect is one which is "obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp.2d 605, 624 (E.D. Mich. 2001).

#### A. Race and sex-based discrimination

Plaintiff argues that "the Court improperly dismissed Plaintiff's race-based claim because: 1) Plaintiff's claim of racial discrimination is generally pled against Defendant and not solely against Mr. Copeland, and 2) Plaintiff's claim of racial discrimination is plausible even when plaintiff and her supervisor are of the same

race." [ECF No. 67, PageID.2364]. Plaintiff argues that "the Court improperly dismissed her racial discrimination claim based upon the fact that Plaintiff failed to mention Ms. Graham [the subject of Plaintiff's briefing] in her Complaint." *Id*. at PageID.2365. Plaintiff's Complaint alleges that Christopher Copeland, Plaintiff's supervisor, engaged in race and sex-based discrimination against her, leading to her termination from Harvard. Now, Plaintiff argues that she "could not have known when she filed her complaint how much she [Vicky Graham] figured into what happened here until Plaintiff conducted discovery." *Id*. Plaintiff agrees that she utilized her summary judgment briefing to attribute the conduct related to her racial discrimination claim to Ms. Graham and argues that she "provided sufficient facts of her racial discrimination claim against Defendant." *Id*. at PageID.2364.

The Court ruled that "Plaintiff brought no evidence establishing that Mr. Copeland discriminated against her because she was a Black woman" as alleged in her Complaint. [ECF No. 64, PageID.2348]. The same is true related to Ms. Graham. Plaintiff acknowledges that it is her burden to provide evidence sufficient to support a prima facie case for discrimination, not merely plead a plausible case for discrimination. [ECF No. 61, PageID.1911] quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 93 S. Ct. 1817, 1820, 36 L. Ed. 2d 668 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). While such evidence "need not be overwhelming or

3

even destined to prevail" it must be enough for one to "infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981). "[T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id*. at 254 quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Neither the actions of Mr. Copeland, nor the actions of Ms. Graham establish a prima facie case for discrimination.

The evidence shows that Plaintiff committed a major work violation pursuant to Harvard's company work rules and policies. [ECF No. 59-7, PageID.1871]. Harvard defines a major work violation as "any willful or deliberate violations of Harvard's or safety rules of such a nature or degree that continued employment may not be desirable." *Id*. It goes on to describe examples of major work violations "which may subject an employee to an immediate discharge without warning." *Id*. The list includes "[u]nauthorized use of customer property, telephones, vending machines or other equipment or removal of tenant property from the premises." *Id*. at PageID.1872.

Plaintiff repeatedly testified that when Mr. Copeland entered the suite she was assigned to clean, she was sitting down and charging her phone. [ECF No. 59-

6, PageID.1791-92]. Ms. Graham's decision to terminate Plaintiff's employment was outlined in the October 22, 2018, e-mail sent by Ms. Graham to Darryl Jones, Plaintiff's union representative. [ECF No. 42-6, PageID.760]. The e-mail states Defendant's decision to bypass a "Last Chance Agreement" and proceed straight to termination for several distinct reasons:

1. Employee was sitting at the tenant's desk, utilizing the tenant items while listening to music, using phone charger, and doing a crossword puzzle for an obscene amount of time. (caught by supervisor) > Major company violation – "Unauthorized use of customer property"
2. Insubordination; taking unauthorized break; time fraud.
3. The supervisor went back up to the suite, when the cleaner was not answering to report to the office after being caught. The employee was still sitting at the tenant's desk. > "sleeping, loafing, or malingering on the job"
4. "Performing unauthorized personal work on company time"
5. Ms. Spicer displayed rude behavior in the grievance meeting, she admit *sic* to sitting down and using tenant items, with a nonchalant attitude. She also has complaints on job performance in different suites, which is an indication that work was not getting done. She also displayed no regard as to what happens with her job.

*Id*. Plaintiff argues that [a] jury should be able to see if it believes Ms. Graham and Defendant's far-fetched rationale for Plaintiff's termination" despite Plaintiff's own admissions. [ECF No. 67, PgeID.2365].

Plaintiff has provided no evidence showing that her termination was based on race. Regarding Ms. Graham, Plaintiff testified that she believed Ms. Graham's comment that she would not want Plaintiff sitting in her chair was racially

5

motivated because "the way she said it because it was very harsh[.]" ECF No. 59-6, PageID.1773. Plaintiff further testified that Ms. Graham had never said anything race based to her in the past. *Id*. at PageID.1774. Plaintiff testified that she assumed the comment was race based without any facts backing it up. *Id*. at PageID.1775. Plaintiff attempts to compare her situation with other individuals who she believes were given more chances than she was after receiving several performance complaints. See [ECF No. 61, PageID.1915]. However, none of those individuals committed a major violation of Harvard's policies.

Plaintiff has provided no evidence supporting her claims of racial or sexual discrimination against Mr. Copeland. When asked what agent of Harvard's had a practice of being more critical of female workers in how they completed their job duties, as alleged in the Complaint, Plaintiff responded "I don't know. I can't recall." [ECF No. 59-6, PageID.1783]. Plaintiff also testified that she had never observed any Harvard Maintenance employee, or anybody related to Harvard Maintenance be more critical of female workers in how they completed their job duties. *Id*. at PageID.1783. Plaintiff further testified that she knew that women were treated differently because another employee, Kenyatta, told her. *Id*. at PageID.1785-86. Plaintiff relies on statements made by another employee who was also terminated by Harvard to support her claim that Mr. Copeland discriminated against Black women. *Id*. at PageID.1793-94. But Plaintiff does not know why Ms.

6

Turner was terminated and explicitly stated that she was not claiming that it was because of sex or race-based discrimination. *Id*. at PageID.1794.

Plaintiff has not provided any support for her discrimination claims or shown any palpable error related to the Court's ruling that would warrant a different disposition. Therefore, Plaintiff's motion for reconsideration is denied as to both the race-based and sex-based discrimination claims.

### B. Hostile Work Environment

Plaintiff, again, relies on assumed microaggressions as the basis for a case for hostile work environment. Plaintiff argues that "Defendant's actions—including labeling Plaintiff as 'rude, overly aggressive, and unpleasant'…in an environment where African-American employees were systematically underpaid and mischaracterized, particularly African-American women, created a hostile work environment." [ECF No. 67, PageID.2371]. Plaintiff relies on the termination chart showing notes next to individuals who were terminated and including comments such as "careless attitudes" or being "rude." see [ECF No. 62-4]. But Plaintiff fails to explain how a chart that Plaintiff did not have access to until discovery would have impacted her work environment. As stated in the Court's Order, Ms. Graham made such comments in regards to her observation of Plaintiff's demeanor in the union meeting held to determine the fate of Plaintiff's employment with Harvard.

[ECF No. 59, PageID.1549]. While such comments have been generally understood in the African American community to perpetuate a stereotype typically imposed upon Black women, Plaintiff has not shown that the comments interfered with Plaintiff's work environment because Plaintiff never returned to Harvard after the union meeting. In fact, Plaintiff did not even find out about the comments until she had formally been terminated from Harvard.

Plaintiff has pointed to no palpable defect which would warrant a change in disposition on the issue of hostile work environment. Plaintiff's Motion for Reconsideration is DENIED.

## IV.  CONCLUSION/ORDER

In light of the foregoing,

IT IS SO ORDERED that Plaintiff's Motion for Reconsideration [ECF No. 67] is DENIED.

SO ORDERED.

s/Denise Page Hood  
Denise Page Hood  
United States District Judge

Dated: July 24, 2025